JONES DAY

250 VESEY STREET • NEW YORK, NEW YORK 10281.1047

TELEPHONE: +1.212.326.3939 • JONESDAY.COM

DIRECT NUMBER: +1.212.326.3410
RCMARTIN@JONESDAY.COM

August 12, 2026

BY ECF

Hon. Daniel J. Stewart, U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway - 4th Floor
Albany, NY 12207

Re: *Consumer Directed Choices, Inc. v. Public Partnerships, LLC*
Case No. 1:25-cv-00868-AJB/DJS (N.D.N.Y.)
Letter Motion to Compel the Production of Documents and the Entry of a Protective Order

Dear Judge Stewart:

We represent the plaintiff and counterclaim defendant, Consumer Directed Choices, Inc. ("CDChoices"). Pursuant to the Court's August 4, 2026 Order, we write to request the Court's assistance in resolving remaining disputes regarding two matters. First, we request the Court's assistance regarding Defendant/Counterclaimant Public Partnerships, LLC ("PPL")'s responses to the First Set of Requests for Production ("RFPs") that CDChoices served on PPL on March 8, 2026. Second, we request the Court's assistance regarding the entry of a protective order ("PO") to govern discovery in this case, the absence of which PPL is currently invoking to avoid producing any documents.

As described herein and in the attached Declaration of Rebecca C. Martin ("Martin Decl."), the parties have for the last several months engaged in extensive efforts amongst themselves to resolve and reduce their discovery-related disputes. Various areas of controversy have been eliminated, but significant areas of disagreement remain over certain categories of documents sought by CDChoices' RFPs, which require the Court's intervention. As described below, PPL refuses to produce the following categories of relevant documents: (a) documents related to any other subcontractors and/or the New York State Department of Health ("NYSDOH"), (b) documents related to PPL's selection as the single statewide fiscal intermediary ("FI") and its use of subcontractors like CDChoices, (c) documents related to the departures of former PPL executives, and (d) certain documents related to PPL's statements about CDChoices' purported termination as PPL's subcontractor.

Finally, the parties have reached an impasse regarding the language of a PO, which is impeding the orderly conduct of discovery in this action. As detailed below, PPL wants to

ignore the standard contours of a HIPAA-qualified protective order[1] and instead insists upon a PO in this case (which unavoidably turns on conduct relating to Consumers) that gives PPL a blank check to refuse producing any Consumer witness names or other Consumer-related protected health information ("PHI"). PPL has unilaterally labeled this information categorically "irrelevant" to both parties' claims and defenses, and PPL refuses to address such issues—to the extent they arise at all—in the context of particular discovery requests. Therefore, CDChoices hereby requests that the Court enter a HIPAA-qualified PO to govern the exchange of discovery in this case (a proposed PO is attached to the Martin Declaration as **Exhibit K**).

**BACKGROUND**

As the Court may recall, this is primarily a contract dispute arising out of the implementation of amendments to New York's Consumer Directed Personal Assistance Program ("CDPAP"). *See* N.Y. Soc. Servs. Law § 365-f(4-a) (2024) (the "CDPAP Amendments"). These amendments required the transition of hundreds of thousands of vulnerable CDPAP Medicaid beneficiaries receiving in-home personal care services administered by hundreds of different FIs to a single statewide FI—namely, PPL. The CDPAP Amendments expressly required the single statewide FI to enter into subcontracts with at least four former FIs to assist in operating the program. *See* N.Y. Soc. Servs. Law § 365-f(4-a)(ii-b) (2024). As Governor Hochul's office announced on September 30, 2024, CDChoices was selected as one of the four "Core Regional Home Care Partners" to help "ensure multilingual, culturally sensitive home care is easily accessible for CDPAP users on a regional basis."[2]

PPL and CDChoices signed a Subcontractor Agreement in late 2024 (the "Agreement"). As part of the parties' negotiations, PPL made repeated and emphatic assurances that, as one of the four core partners, CDChoices would be specially positioned to serve a high volume of Consumers. *See* CDChoices' Second Am. Compl., Dkt. No. 61 at 11, ¶ 48.[3] Under the Agreement the parties ultimately executed, CDChoices agreed to serve as PPL's subcontractor

---

[1] 45 C.F.R. § 164.512(e)(1).

[2] *Governor Hochul Announces Next Steps in Plans to Strengthen Home Care Services for New Yorkers*, Governor Kathy Hochel (Sept. 30, 2024), https://www.governor.ny.gov/news/governor-hochul-announces-next-steps-plans-strengthen-home-care-services-new-yorkers; *see also State FI Update*, NYS Ass'n of Health Care Providers, https://www.nyshcp.org/hot-topic-in-home-care-october-1-2024/ (CDChoices one of "four core regional home care partners" of PPL); *State Awards Contract for Statement Fiscal Intermediary*, LeadingAge New York (Oct. 1, 2024), https://www.leadingageny.org/providers/home-and-community-based-services/fiscal-intermediaries/new-york-awards-contract-for-statewide-fiscal-intermediary/ (same)

[3] *See also Governor Hochul Announces*, supra note 2.

and to provide services to certain Medicaid beneficiaries. And under that same Agreement, PPL agreed to, among other things, (1) "work in good faith to assist [CDChoices] to reach its desired capacity" for beneficiaries served under the program, understanding that this "desired capacity" was 50,000 consumers; (2) pay CDChoices a set fee for every Medicaid beneficiary that CDChoices helped transition to the new system; and (3) pay CDChoices for the services it provided to Consumers following their transition to PPL (the "Transition"). CDChoices' Second Am. Compl., Dkt. No. 61 at 11–13, ¶¶ 48–54; CDChoices' Second Am. Compl., Ex. C (Agreement), Dkt. No. 61-3; CDChoices' Motion for Temporary Restraining Order and Preliminary Injunction, Ex. 2 (CDChoices' Plan to PPL), Dkt. 15-3 at 23 (reflecting CDChoices' stated capacity of 50,000 Consumers).

Unfortunately, PPL breached that agreement by revoking CDChoices' access to the requisite database and refusing to pay CDChoices monies earned, among other things. Thus, CDChoices was forced to bring this action. CDChoices alleges that PPL wrongly attempted to terminate its subcontract with CDChoices and that PPL breached its promise to work in good faith to assist CDChoices in reaching its desired capacity for Consumers served. CDChoices' Second Am. Compl., Dkt. No. 61 at 19–20, ¶¶ 82–89. In response, PPL filed counterclaims and (wrongly) asserts, among other things, that CDChoices "misled" Consumers in connection with the temporary restraining order entered in *Engesser v. McDonald*, No. 25-cv-1689 (E.D.N.Y.), and that CDChoices' statements to Consumers also damaged PPL's relationship with those Consumers.[4]

In order to adequately prove its theories and to rebut and defend against PPL's arguments and counterclaims, CDChoices served document requests. PPL served objections and the parties met and conferred multiple times. Unfortunately, PPL has still refused to produce several categories of responsive documents, necessitating this request. CDChoices asks the Court to compel PPL to produce four categories of documents as follows.

---

[4] Contrary to PPL's position in this case, PPL damaged its own relationships with Consumers and caused any economic harm it suffered. The United States Department of Justice recently filed a complaint accusing PPL of health care fraud in the Transition pursuant to 18 U.S.C. §§ 1035 and 1347, alleging: (1) PPL knew ahead of time that it lacked the capacity to successfully complete the Transition, (2) PPL submitted a "recklessly low bid" to NYSDOH, and (3) PPL was plotting as early as July 2024 ways to "catch up" its profits extracted from CDPAP program, including by breaching its agreement with NYSDOH following the Transition. *See United States of America v. Public Partnerships, LLC*, No. 1:26-cv-03601, Dkt. No. 1 at 16–24, 36–39, 46, 50, ¶¶ 37–57, 90–103, 123, 129 (E.D.N.Y.). In short, PPL itself created the mess for which it hopes to pin the blame on CDChoices.

**I. Documents Related to PPL's Use of Subcontractors, Including Such Communications with Other Subcontractors or With NYSDOH**

First, PPL refuses to produce any relevant documents related to any former FI (other than CDChoices) that subcontracted with PPL. Such documents are responsive to the following disputed Requests for Production:

Request for Production No. 5: *Please produce all Documents, including Communications, Related to any Communications between You and any employee, contractor, officer, or representative of the New York Department of Health Relating to the consideration and selection of any Former FIs to be Subcontractors and/or Facilitators reflected in the September 30, 2024, New York state government press release, "Governor Hochul Announces Next Steps in Plans to Strengthen Home Care Services for New Yorkers."*

Request for Production No. 6: *Please produce all Documents, including Communications (internal and with the New York State Department of Health), Relating to the Fiscal Intermediary opportunity in New York in connection with CDPAP, including but not limited to the use of partnering arrangements with Former FIs and using such FIs for purposes of the Transition.*

Request for Production No. 39: *Please produce all Documents, including Communications, Related to PPL's consideration, recruitment, and/or use of Former FIs as Subcontractors and/or Facilitators, including any discussions of the role and decisions about which and how many Former FIs to engage as Subcontractors and/or Facilitators and when to do so, as well as all Documents or Communications about the duration, or scope of subcontracting arrangements, Facilitator capacity, and termination provisions therein.*

Requests 5, 6, and 39 go directly to the question of whether PPL intended to honor its promises to CDChoices to work in "good faith" to help it reach its "desired capacity" of serving 50,000 Consumers. PPL's communications to and about subcontractors are highly relevant to determining whether PPL overpromised full capacity to multiple overlapping subcontractors. PPL's communications will also support whether PPL simply intended to briefly use subcontractors like CDChoices as a bridge during the Transition and then transfer the bulk of the Consumers to PPL itself to increase its own profits.

If there were any doubt about whether such documents were relevant to CDChoices' claim that PPL failed to work in good faith to help CDChoices reach its capacity, as PPL had promised, PPL itself has placed documents concerning other subcontractors into dispute. PPL has argued that CDChoices' desired capacity of 50,000 consumers was unreasonable given the number of other FIs with which PPL had subcontracted. *See, e.g.*, PPL's Am. Answer and

Counterclaims, Dkt. No. 82 at 34–35, ¶¶ 59–63 (CDChoices' understanding regarding its capacity plan was unrealistic given that CDChoices was in competition with those subcontractors to serve CDPAP Consumers); PPL's Mot. to Dismiss, Dkt. No. 34 at 12–13 ("[T]he Agreement did not *guarantee* additional Consumer relationships. . . . If a Consumer elects to use a Facilitator, *the Consumer* (not PPL) selects which of the 35–40 Facilitators they would like to use."). In other words, PPL attempts to radically minimize CDChoices' position as one of the "four, core regional contactors" and points to other subcontractors to justify the fact that PPL never intended to honor its promises to CDChoices to help reach its desired capacity.

Further, the Court should reject PPL's argument that any documents related to its relationship with NYSDOH are not relevant. To the extent Requests for Production 5, 6, and 39 deal with PPL's relationship with NYSDOH, they do so because of NYSDOH's obvious and admitted involvement in PPL's subcontracting decisions, which again, are squarely relevant to CDChoices' capacity-related claims.[5] Further, such documents are relevant to PPL's own counterclaim for CDChoices' alleged breach of a contractual duty of loyalty, which **expressly references and turns on** the parties' relationships to NYSDOH. Second Am. Compl., Ex. C (Agreement), Dkt. No. 61-3 at 21.

The Court should compel PPL to produce non-privileged documents responsive to Requests for Production 5, 6, and 39.

## II. Documents Related to PPL's Selection as the Single Statewide FI

Second, PPL refuses to produce relevant documents concerning PPL's selection as the single statewide FI, which are responsive to the following Requests for Production:

Request for Production No. 7: *Please produce all Documents, including Communications, Related to the New York State Department of Health's Request for Proposal #20524 and its consideration and selection of You as the single statewide Fiscal Intermediary for CDPAP, and Your resulting contract with New York State to serve as the single statewide Fiscal Intermediary for CDPAP.*

Request for Production No. 23: *Please produce Documents, including Communications (both internal and with CDChoices and other Former FIs), sufficient to show Your being*

---

[5] *Governor Hochul Announces*, *supra* note 2; Martin Decl., Ex. P (PPL August 2024 Technical Proposal to NYSDOH at 8–10, 55, 59, 74, 76, 120) (making assurances to NYSDOH regarding the use of legacy FI subcontractors).

*selected or expectation that You would be selected as the single statewide Fiscal Intermediary for CDPAP prior to September 27, 2024.*

These requests, too, are relevant to CDChoices' claim that PPL breached its contractual promise to work in good faith to assist CDChoices in reaching its desired capacity. The use of subcontractors was core to the CDPAP Amendments and core to their implementation—as evidenced by the statutory language of the CDPAP Amendments, the Request for Proposal issued by NYSDOH,[6] PPL's submissions to NYSDOH,[7] and PPL's own outreach to potential regional subcontractor partners long before the Request for Proposal was even issued. In short, PPL's documents and communications regarding the single statewide FI opportunity in New York and PPL's selection likely contained discussion regarding its intentions for the use of subcontractors like CDChoices and extent of New York's CDPAP Consumers PPL itself had the capacity to transition and/or serve. CDChoices is entitled to such documents and communications as they go directly to PPL's true intentions, and whether it kept its promise to work in good with CDChoices to help CDChoices reach its desired capacity.

The fact that PPL's selection as the single statewide FI is not itself in dispute makes no difference. Documents and communications related to that selection are likely to contain information relevant to PPL's good faith. That is, these documents and communications offer a rare and candid window into how PPL **intended** for Consumers to be serviced following the Transition and how PPL represented those intentions to NYSDOH and others.

Accordingly, the Court should compel PPL to produce non-privileged documents responsive to Requests for Production 7 and 23.

---

[6] For example, the Request for Proposal contemplated the Statewide Fisal Intermediary "[s]ubcontract[] with at least one entity per NYS DOH MLTC rate setting region, as seen in Attachment D, that has a proven record of delivering services to individuals with disabilities and the senior population and has been providing fiscal intermediary services since January 1, 2012[.]" *RFP #20524*, N.Y. State Dep't of Health (June 17, 2024), https://www.health.state.ny.us/funding/rfp/inactive/20524/20524.pdf.

[7] For example, in its April 4 pre-bid submission to NYSDOH, PPL stated that "[i]n other highly scaled transitions including consolidations from many FIs, we have been effective in reaching agreeable subcontracting arrangements that also ease the transition for the FI." Martin Decl., Ex. O (April 2024 PPL Pre-Bid Submission to NYSDOH at 31); *see id.* at 15 ("We can add reserve capacity to our staffing to manage periods of peak volume related to mailing, client/provider enrollment, document processing, and/or customer service activity. If necessary, we will plan to supplement our core services with subcontractor support to meet service level requirements most efficiently during these periods.").

## III. Documents Related to Vince Coppola and Maria Perrin's Departures from PPL

Third, PPL refuses to produce relevant documents concerning the departures of PPL executives Vince Coppola and Maria Perrin, which are responsive to the following Request for Production:

Request for Production No. 42: *Please produce all Documents Related to the departure of Vince Coppola and Maria Perrin from PPL in the summer of 2025.*

Request No. 42 is relevant to PPL's counterclaims and causation of PPL's alleged damages. Vince Coppola and Maria Perrin departed shortly after the *Engesser* TRO was issued "amid a string of controversies surrounding CDPAP's ongoing transition process."[8] Meanwhile, PPL asserts it lost Consumers due to CDChoices' statements, rather than PPL's mismanagement. The departures of two top executives just after PPL's botched Transition and the *Engesser* matter bear on the accuracy of CDChoices' communications and the cause behind PPL's loss of Consumers.

Accordingly, the Court should compel PPL to produce non-privileged documents responsive to Request for Production 42.

## IV. Documents Related to PPL's Statements About CDChoices

Fourth and finally, PPL refuses to produce relevant communications with third parties regarding CDChoices after April 3, 2025, which are responsive to the following Request for Production:

Request for Production No. 10: *Please produce all Communications with Consumers and Managed Care Plans concerning CDChoices on or after March 31, 2025.*

As the Court may recall, April 3, 2025 is the date when PPL shut off CDChoices' access to the PPL@home database, effectively refusing CDChoices the ability to serve CDPAP consumers. PPL has refused to produce any communications beyond that key date. Martin Decl., Ex. G (PPL's May 19 Letter at 2). But PPL's communications after April 3 are particularly relevant to this case. To start, they are relevant to PPL's counterclaims. PPL purported to terminate CDChoices as a subcontractor on April 3, 2025, then transferred all of

[8] Adam Healy, *PPL Leaders Resign Amid Problematic Home Care Program's Transition*, McKnights Home Care (July 16, 2025), https://www.mcknightshomecare.com/news/ppl-leaders-resign-amid-problematic-home-care-programs-transition/ ("These leadership changes come amid a string of controversies surrounding CDPAP's ongoing transition process.").

CDChoices' existing Consumers to either itself or other subcontractors. PPL alleges that CDChoices' statements to Consumers about the Transition and Judge Block's Order in *Engresser* both misled Consumers and damaged PPL's business relationship with Consumers. CDChoices is plainly entitled to documents that show the state of PPL's business relationship with Consumers, whether those communications occurred before or after CDChoices' statements. And there can be no reasonable dispute that any fallout relating to CDChoices' statements between March 31 and April 3 and communications relating to these core issues occurred after April 3. Stated differently, documents and information from after April 3, 2025, are plainly relevant to whether, as PPL alleges, CDChoices' conduct from March 31 to April 3 **caused** PPL damages.

As for CDChoices' claims and allegations, CDChoices specifically alleges that, when PPL purported to terminate CDChoices as a subcontractor on April 3, 2025, it did so unsuccessfully and in breach of the Agreement's termination provisions, which required, among other things, a 30-day opportunity to cure any breach. CDChoices' Second Am. Compl., Dkt. No. 61 at 5, 12, 18–19, 22–23, ¶¶ 17, 51, 71–81, 113–21. CDChoices further alleges that on June 9, 2025—more than two months after PPL's proposed April 3 discovery timeframe cutoff—PPL informed CDChoices that it had been **avoiding** terminating the Agreement until that point. *Id.* at 18, ¶ 76. Given that even PPL did not view the contract as terminated by April 3, PPL cannot pretend communications after April 3 have no bearing on CDChoices' claims. And finally, to the extent PPL was communicating internally after-the-fact regarding its choice to stop working with CDChoices, those would still be relevant to the question of PPL's decision to stop working with CDChoices.

Accordingly, the Court should compel PPL to produce non-privileged documents responsive to Request for Production 10.

## V. Protective Order

Beyond these disputes regarding Requests for Production, PPL has also insisted upon entry of its own preferred Protective Order prior to producing any documents. Yet PPL will not agree to a standard HIPAA-qualified protective order that courts around the country (and CMS) trust to keep protected health information confidential. Instead, PPL insists that the parties must agree to a PO that blesses PPL's refusal to produce Consumer witness names or any other Consumer-related PHI.

After months of negotiations, CDChoices believed that the parties had reach an agreement on June 12 as to a standard HIPAA-complaint PO that would protect any PHI shared between the parties in discovery. Martin Decl. ¶¶ 19–21; *id.*, Ex. K (CDChoices' Proposed June 12 PO). But PPL now takes the position that this Court should order both parties to **redact all**

**PHI in all discovery exchanged between the parties**, which expressly includes any Consumer-identifying information (such as their name). Martin Decl., Ex. N (PPL's Proposed June 23 PO).

PPL has never identified any authority—federal or state—that categorically requires such redactions in discovery exchanged between the parties. Rather, PPL has attempted to justify its position by asserting (wrongly) that Consumer-identifying information is not relevant to the dispute between CDChoices and PPL. PPL has also repeatedly made the point that NYSDOH—who is not a party to this case—does not "approve" of a protective order in this case that allows for PHI to be exchanged in discovery.[9] Despite the fact that CDChoices' proposed June 12 PO contains standard HIPAA protections for any Consumer-identifying information (including that such information only be used for purposes of this action and that it must be returned to the covered entity at the end of this action), PPL still insists the Court should order full redaction of any Consumers' PHI in any documents or other discovery before they are produced to the other side. In other words, under PPL's view, the PO should require PPL to withhold all consumer names or other information before producing discovery to CDChoices, and the PO should require CDChoices to comb through every document and redact potential PHI before producing.

The Court should reject PPL's position and enter CDChoices' proposed June 12 PO attached to the Martin Declaration as **Exhibit K**.

First, the standard HIPAA-related provisions in the attached order are more than adequate to provide needed protection for Consumers' privacy. 45 C.F.R. § 164.512(e) ("A covered entity may disclose protected health information in the course of any judicial or administrative proceeding . . . In response to a . . . discovery request . . . if: . . . The covered entity receives satisfactory assurances . . . from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(V) of this section."). Indeed, PPL has not suggested that CDChoices' proposed PO is in any way not compliant with HIPAA requirements. Instead, PPL has objected wholesale to the production of PHI in the first instance. Courts around the country, including New York federal courts, have rejected similar attempts to ignore HIPAA's provisions regarding adequate protective orders and instead refuse relevant discovery altogether. *See Bagley v. New York State Dep't of Health*, 2017 WL 11922423, at *2 (E.D.N.Y. Dec. 7, 2017) (rejecting defendants'

---

[9] At the parties' meet and confer, PPL proposed that the PO could allow for discovery to include Consumers' identifying initials and that, should CDChoices have the need to know a given Consumer's identity, CDChoices can request PPL give the name. PPL's proposal is hopelessly inefficient and would effectively give PPL control over CDChoices' ability to understand basic information in PPL's documents. In any event, PPL's proposed June 23 PO does not contain this proposal and instead requires complete redaction of PHI in discovery.

request to redact all PHI and stating, "[t]he Court therefore orders the defendants to produce relevant ESI without redactions, but subject to a" HIPAA-qualified protective order).

Second, PPL's position, that no identifying information could possibly be relevant, borders on frivolous. To start, CDChoices was entitled under the parties' Agreement to a per-consumer-transitioned payment. CDChoices' Second Am. Compl., Dkt. 61-3 at 19. CDChoices is thus entitled to discovery regarding which Consumers PPL agrees were transitioned to the new system. Next, CDChoices' fclaims pertain to, among other things, PPL's good faith in helping CDChoices' reach its full capacity: PPL asserts that it could not have assisted CDChoices in reaching its desired capacity of 50,000 Consumers because PPL purportedly cannot control who a Consumer will choose to provide FI services. *See* PPL's Mot. to Dismiss, Dkt. No. 34 at 12–13. Thus, CDChoices is entitled to probe that assertion and to determine how PPL, in fact, assigned subcontractors or itself to service individual Consumers. Further, PPL's own counterclaims put at issue whether any Consumers chose not to do further business with PPL as a result of CDChoices' actions. PPL's Am. Answer and Counterclaims, Dkt. No. 82 at 68–70, ¶¶ 261–72. PPL also argues that it properly "terminated" CDChoices because Consumers were "misled" by CDChoices' statements regarding the Transition. *Id.* at 28, 61, ¶¶ 12, 210. All of these contentions require discovery into individual Consumers, yet PPL's proposed PO would prevent CDChoices from obtaining needed discovery to disprove these contentions.

Third, inserting language into a protective order is not the appropriate vehicle for what amounts to a potential relevancy dispute. The relevance of certain information should be addressed, as above in Sections I–IV, on a case by case basis, not through a one-size-fits-all provision in a protective order. And even then, the "general rule" is that "relevance redactions are improper." *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (collecting cases); *see Ozdemir v. Somerset Med. Ctr.*, 2007 WL 1988731, at *2 (N.D.N.Y. July 3, 2007) (holding the court decides discoverability of HIPAA-protected information on a "case-by-case basis").

Fourth, NYSDOH is not a party to this action. It is also not the federal agency that administers HIPAA and otherwise issues regulations governing HIPAA-qualified protective orders. What NYSDOH "approves" cannot dictate the protective order Your Honor enters. And PPL cannot be permitted to use an unproduced collateral agreement with a non-party as a shield to evade its discovery obligations in this litigation. Indeed, PPL has refused to produce its agreement with NYSDOH. Martin Decl., Ex. B (PPL's April 8 Letter at 2).

Fifth, PPL's proposal will require CDChoices to redact its own information—a requirement that is grossly burdensome and not proportional (particularly for a non-profit entity like CDChoices that already submitted sworn statements to the Court regarding the jeopardy that PPL's conduct has put its entire business in). PPL's discovery requests demand that CDChoices

produce voluminous communications with Consumers, including a request for "[a]ll Communications between CDChoices and any Consumer or PA that were sent for the purpose of assisting, supporting, or facilitating a Consumer's registration with PPL@Home." Martin Decl., Ex. Q (PPL's Request for Production at No. 3).[10] This request alone would almost certainly require a highly significant number of redactions, ballooning the cost of discovery and further delaying document production while those redactions are done. A far more efficient (but still secure) option exists—producing unredacted PHI under a HIPAA-compliant PO and redacting any PHI that is filed with the Court, as provided under the June 12 PO.

Sixth, PPL's proposal would require CDChoices to fight with a blindfold. PPL's proposed PO requires redaction of all identifying information in discovery but, bizarrely, allows Consumers' initials be filed with the Court. Martin Decl., Ex. N (PPL's Proposed June 23 PO). In other words, PPL can use information in Court filings but deny CDChoices from obtaining that same information in discovery. As PPL alone knows the current status of CDChoices' former Consumers, this scheme creates an imbalance of information that will impede CDChoices' ability to properly litigate this case.

The entry of a PO can no longer be delayed. PPL's counsel has suggested that it will not produce documents until the Court has entered a PO. CDChoices requests the entry of the attached June 12 PO, providing PHI protections so that discovery may proceed.

* * *

CDChoices respectfully requests that the Court compel PPL to produce non-privileged documents responsive to Requests for Production 5–7, 10, 23, 39, and 42. CDChoices also respectfully request that the Court enter the June 12 PO.

---

[10] CDChoices objects to this Request as overbroad and disproportionate, in that producing every individual communication with each of those Consumers regarding the registration process would constitute thousands upon thousands of documents that are largely duplicative of one another. That objection remains the subject of negotiations between the parties on how to avoid unnecessarily duplicative productions.

Respectfully submitted,

Rebecca C. Martin
Sophie Leff
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
rcmartin@jonesday.com
sleff@jonesday.com

B. Kurt Copper (admitted pro hac vice)
2727 N. Harwood
Dallas, TX 75201
(214) 969-5163
bkcopper@jonesday.com

*Attorneys for Plaintiff CDChoices*

Cc: Counsel of record via ECF